IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ESTHER M.-S.,[1]

                Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

No. 6:23-cv-213-HL

OPINION & ORDER

HALLMAN, Magistrate Judge:

Plaintiff Esther M-S. brings this action under the Social Security Act (the "Act"), 42

U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social

Security (the "Commissioner"). The Commissioner denied Plaintiff's application for Social

Security Income ("SSI") under Title XVI of the Act. 42 U.S.C. § 401 *et seq*. For the following

reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter ... a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted)

**BACKGROUND**

**I.    Plaintiff's Application**

Plaintiff alleges disability based on the combined effects of her physical and mental impairments, which included recurrent dislocations of her patella (knee caps), knee instability,

osteoarthritis in her neck and back, depression, anxiety, and migraines. Tr. 302, 311.[2] At the time

of Plaintiff's amended alleged onset date, September 10, 2019, she was 36 years old. Tr. 266.

Plaintiff protectively applied for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") on September 10, 2019, alleging an onset of disability in both

applications of April 5, 2007. Tr. 257-63, 271-801. Her applications were denied initially and on

reconsideration. Tr. 72, 73, 100, 101. Plaintiff subsequently requested a hearing, which was held

on October 4, 2021, before Administrative Law Judge ("ALJ") Mark Triplett. Tr. 39-71. Plaintiff

appeared and testified at the hearing, represented by counsel. Tr. 39-71. With the assistance of

counsel, Plaintiff amended her alleged onset date to September 10, 2019, and withdrew her DIB

claim. Tr. 42. On November 1, 2021, the ALJ issued a decision denying Plaintiff's SSI claim. Tr.

18-38. Plaintiff requested Appeals Council review, which was denied on December 9, 2022. Tr.

1-7. Plaintiff then sought review before this Court.[3]

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v.*

*Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected ... to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person

is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At

step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

---

[2] Citations to "Tr." are to the Administrative Record. *See* ECF 8.

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. ECF 7.

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

**III.     The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 24. At step two, the ALJ found Plaintiff had the following severe, medically determinable impairments: degenerative joint disease of the knees (bilateral with right knee hypermobile patellae); degenerative disc disease; obesity; and migraine. Tr. 24. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 25. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> to perform medium work as defined in 20 CFR 416.967(c) except the claimant can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can frequently stoop, but occasionally kneel, crouch, and crawl. The claimant requires regular work breaks every two hours.

Tr. 26.

At step four, the ALJ determined that Plaintiff had no past relevant work. Tr. 29. At step five, the ALJ determined that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled whether or not she has transferable skills. Tr. 30. The ALJ further found that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as laundry worker and prep cook. Tr. 30. The ALJ therefore found Plaintiff not disabled. Tr. 31.

**DISCUSSION**

Plaintiff argues that the ALJ (1) failed to analyze her claim using the amended alleged onset date, (2) failed to address whether her migraines medically equaled Listing 11.02, and (3) failed to include off-task limitations or absences in the RFC due to her migraines. Pl.'s Br., ECF No. 9, at 8-9. This Court disagrees.

## I.    Amended Alleged Onset Date

Plaintiff first argues the ALJ erred by failing to analyze Plaintiff's disability under the correct amended alleged onset date of September 10, 2019. Pl. Br. at 9. The ALJ accepted this amended alleged onset date at the hearing, Tr. 43, but repeatedly (and incorrectly) referred to the initial April 5, 2007 alleged onset date in his written decision. *See* Tr. 21-32. Defendant concedes this was error but argues that Plaintiff cannot meet her burden of demonstrating that the error was harmful. Def. Br., ECF No. 11 at 2.

It is Plaintiff's burden to show harmful error. *See Shinseki v. Sanders*, 556 U.S. 396, 409, (2009). An error is "harmless" when it is "inconsequential to the ultimate nondisabiltiy determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Plaintiff believes this error was harmful because the ALJ gave "partial weight" to the medical opinions of two state-appointed physicians that considered evidence from before the amended alleged onset date, resulting in an opinion that Plaintiff could do "medium work." Pl. Br. at 9-10 (arguing that the two opinions "relied on numerous records dating from before the amended alleged onset of disability") (citing Tr. 78). To show that it was error to rely on these opinions, Plaintiff must demonstrate how they were necessary to the ALJ's conclusion that Plaintiff could perform "medium work" in the RFC, and that they somehow lacked in either supportability or

consistency.[4] Because Plaintiff does not bear her burden to show the ALJ's error was harmful, this Court will not disturb the ALJ's findings on this basis.

Plaintiff cannot show the ALJ harmfully erred because she fails to show that either doctor's opinion lacks support or is inconsistent with the record. Social Security regulations require ALJs to inquire into the supportability and consistency of medical opinions, and to support their decisions to rely on medical opinions with substantial evidence. 20 C.F.R. §§ 404.1520c(c)(1-2), 416.920c(c)(1-2). Plaintiff's only argument that the ALJ erred in relying on these opinions is that the opinions reference medical evidence from before the amended alleged onset date. Pl. Reply at 2-3. This is not error. Evidence pre-dating the alleged onset date is typically less relevant, but not automatically irrelevant to a medical opinion. *Compare Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir.2008) (citation omitted) ("Medical opinions that predate the alleged onset of disability are of limited relevance.") *with Hamlin v. Barnhart*, 365 F.3d 1208, 1211, 1223 n. 15 (10th Cir. 2004) (findings more than five years before the alleged onset date were relevant to whether the plaintiff was disabled as a as of his alleged onset date). And as Plaintiff herself points out, while these two medical opinions reference findings dating to the original alleged onset date, they also recognize that Plaintiff's conditions worsened after the alleged amended onset date, and take that up-to-date evidence into account. Pl. Reply at 3 (noting Dr. Ballard's acknowledgement of Plaintiff's worsening conditions). Indeed, these medical opinions acknowledge all the current evidence of Plaintiff's

---

[4] Defendant argues Plaintiff does not challenge the ALJ's consideration of these opinions lacked substantial evidentiary support, and thereby forfeited the issue. Def. Br. at 5 (citing *Carmickle*, 533 F.3d at 1161 n.2 (stating a revieing court ordinarily will not consider issues that a claimant fails to raise "with any specificity" in the opening brief)). Although Plaintiff does not raise this issue directly, it is the necessary implication of the first issue she raises in her brief, and the Court finds Plaintiff did not waive it.

limitations, but nevertheless opine that she can do "medium work" because there is a significant amount of evidence relating to her condition after the amended alleged onset date to back their opinions up. *See* Tr. 114 (noting several medical records from 2019-2020 reflecting, *inter alia*, improved anxiety, normal mood and affect, weight loss, more energy, that Plaintiff's "knee no longer pops out," and normal gait). Because the ALJ adequately considered the supportability and consistency of these opinions by examining the bases for his conclusions, their consistency with the record, and their inclusion of evidence prior to the amended alleged onset date was not error, the Court cannot find any harmful error in the ALJ's decision to rely upon them.[5]

## II.    Listing 11.02

Plaintiff also argues the ALJ erred by failing to consider whether her migraines medically equaled Listing 11.02. Pl. Br. at 10-12. Defendant counters that the ALJ did, in fact, decide that Plaintiff's migraines did not equal Listing 11.02, and incorporated the substantial evidence to support that decision throughout the written opinion. Def. Br. at 9-12.

If a claimant meets or medically equals a listed impairment at step three of the sequential analysis, she is presumed disabled regardless of age, education, or work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). An impairment, or combination of impairments, is medically equivalent to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment," considering, "all evidence in [the] case record about [the] impairment(s) and its effects on [the claimant] that is relevant[.]" 20 C.F.R. § 404.1526(a), (c). Finally, "the claimant's illnesses 'must

---

[5] Plaintiff also fails to bear her burden to show any error in relying on these opinions was harmful because it is not clear that either opinion was necessary to the ALJ's RFC formulation. The ALJ appears to conclude all on his own that "[t]he objective evidence of mild degenerative disc disease and obesity support limiting the claimant to medium exertional work…," even before analyzing the two doctors' opinions Plaintiff challenges. *See* Tr. 28. It is not clear that either opinion was necessary for the ALJ's "medium work" conclusion in the RFC, and therefore that there was any harmful error. Plaintiff has failed to show harmful error on this basis as well.

be considered in combination and must not be fragmentized in evaluating their effects.'" *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (quoting *Beecher v. Heckler*, 756 F.2d 693, 694–95 (9th Cir. 1985)). "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.' " *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013)(quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Id.*

Primary headache disorder is not specifically addressed in the listings, but epilepsy (listing 11.02) is the most closely analogous listed impairment. Social Security Ruling (SSR) 19-4p, *available at* 2019 WL 416935, at *7. Paragraph B of listing 11.02 requires documentation of a detailed description of a typical seizure occurring at least once a week for at least 3 consecutive months. *Id.*; 20 C.F.R. Part 404, Subpart P, Appx 1 § 11.02B. To evaluate whether a primary headache disorder is equal in severity and duration to listing 11.02B, an ALJ considers the following factors:

> A detailed description from an acceptable medical source of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment; and limitations in functioning that may be associated the primary headache disorder or effects of its treatment.

SSR 19-4p, at *7.

The ALJ did not err in his consideration of Plaintiff's migraines, because he considered the medical evidence and found it did not equal any medical listing, including Listing 11.02. An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). A

boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not

do so. *Id.* (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (holding that ALJ erred

by failing to consider evidence of equivalence)). However, the Ninth Circuit has explained that,

while an ALJ must discuss and evaluate the evidence that supports her conclusion, it is not

required that she do so under the heading "Findings." *Kennedy v. Colvin*, 738 F.3d 1172, 1178

(9th Cir. 2013). "Moreover, '[a]n ALJ is not required to discuss the combined effects of a

claimant's impairments or compare them to any listing in an equivalency determination, unless

the claimant presents evidence in an effort to establish equivalence.'" *Id.* (quoting *Burch v.

Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Here, the ALJ sufficiently considered the frequency and severity of Plaintiff's headaches

as required by SSR 19-4p. Specifically, the ALJ explained how treatment notes indicated that her

migraines were "not intractable" and responded to abortive medication. Tr. 28. The ALJ also

discussed how Plaintiff used abortive medication once or twice a week to treat her headaches,

and inferred from her report in September 2021 that she had been out of her medication "for a

while" that she could manage reasonably well without medication. Tr. 28. Plaintiff does not

identify any evidence the ALJ missed, but merely disputes the weight the ALJ gave the

headache-related evidence.[6] Plaintiff has presented no documentation of a detailed description of

a headache event from a medical source, as required by Listing 11.02B. SSR 19-4p, available at

2019 WL 416935, at *7; 20 C.F.R. Part 404, Subpart P, Appx 1 § 11.02B. Nor has she presented

any medical findings establishing that her headaches would result in more limitations than those

---

[6] For example, Plaintiff argues it was "nonsensical" for the ALJ to find Plaintiff's headaches
were a "severe" impairment at step two, but that they only limited her to "jobs where breaks are
available every 2 hours." Tr. 28.

the ALJ assessed. Absent those, the Court will not disturb the ALJ's determination that Plaintiff's headaches did not meet or equal Listing 11.02.

### III.    RFC

Finally, Plaintiff argues the ALJ erred by failing to include relevant limitations related to her migraines into the RFC. The RFC is the most a person can do, despite the person's physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, available at 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

In formulating Plaintiff's RFC, the ALJ reasonably relied on persuasive medical opinions and the overall record to determine the most Plaintiff could do, despite her headaches. An ALJ need only include limitations in the RFC that are supported by the record, and it is the ALJ's obligation to resolve any conflicts in the record when distilling the RFC. *See, e.g., Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). First, the ALJ relied on the persuasive opinions from the state agency medical consultants who opined, in relevant part, that Plaintiff could perform medium work despite her headaches. Tr. 29. The ALJ also noted the numerous instances in the record that described Plaintiff's headaches as "not intractable," and that they responded to abortive medication. Tr. 28; Tr. 1295-96, 1320, 1526, 1531, 1538, 1540, 1542. Plaintiff counters that her testimony at the hearing about the length of time it took her medication to work, and the side effects of that medication, undermines the ALJ's RFC. *See* Pl. Reply at 9

(citing Tr. 54-56). Plaintiff correctly identifies that the ALJ does not discount this evidence, but misses the final step—showing that her testimony about recovery time and how she feels after medication renders her totally unable to work. Plaintiff cannot point to any medical opinion, medical evidence, or other part of the record that shows she was unable to work when recovering from a migraine. *See* Pl. Br., Pl. Reply. To the extent there was a conflict between Plaintiff's testimony and the more positive medical records the ALJ cited, this was a reasonable exercise of the ALJ's obligation to resolve conflicts in the record when fashioning an RFC. Ultimately, the ALJ reasonably adopted state agency doctors' opinions and other relevant medical evidence when formulating the RFC, and the Court finds the ALJ did not err.

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case.

IT IS SO ORDERED.

DATED: __March 20, 2024_____.

_____
ANDREW HALLMAN
United States Magistrate Judge